## BRUCE-EDGERTON LUMBER CO. v. MASONIC BLDG. ASS'N et al.

Code Civ. Proc. § 697, requires a subcontractor claiming a lien to file with the clerk of court within four months after the material is furnished or labor performed a verified account of his demand. Section 699 provides that every subcontractor may at any time within four months after his labor is performed or materials furnished, file a verified statement thereof with the clerk, and give notice thereof, with a copy of such statement, to the owner, his agent, or trustee, and to the contractor, and that, after the service of such notice, his lien therefor shall have the same force as a lien by the contractor, but shall be enforced against the property only to the extent of the balance due the contractor at the time of the service of such notice, etc. Section 700 provides that, if the contractor refuses to make and sign a settlement when presented to him, the subcontractor may make a statement of the labor done or things furnished, giving all credits, which he shall present to the owner, etc., and shall also within 30 days file a verified copy thereof with the clerk of court, etc. Section 701 provides that the certificate of settlement or statement of the subcontractor shall be a justification to the owner in withholding the amount appearing thereby to be due the subcontractor until the same has been paid, and the owner shall become the surety of the contractor to the subcontractor for the amount due to the extent before provided. **Held,** that said sections 697 and 699 provide wholly different reliefs, and that the court, taking judicial notice of the history of the mechanic's lien law and of the fact that prior to the adoption of the Code of 1903 a commission was appointed who prepared the present Code, would not presume that it was the intention of the Legislature to do away with the right to an absolute lien on the part of subcontractors given by section 697.

(Opinion filed, Oct. 27, 1909.)

Appeal from Circuit Court, Minnehaha County. Hon. JOSEPH W. JONES, Judge.

Vol. 24 S. D. 5.

Action by the Bruce-Edgerton Lumber Company against the Masonic Building Association and others. From a judgment for plaintiff, and from an order· denying a motion for a new trial, defendant association appeals. Affirmed.

*Bailey & Voorhees,* for appellant. *Keith & Keith,* for respondent.

WHITING, J. The defendants J. J. Olsen & Son are contractors, and as such contractors they erected a building for the defendant Masonic Building Association. The other defendants and plaintiff were subcontractors in the erection of such building, and had all filed mechanics' liens against the building. Plaintiff brought this action against .the Masonic Building Association, making the contractor and the several other subcontractors defendants. The purpose of this action was to foreclose the plaintiff's lien, and have the rights of the other lienholders determined. By stipulation the case was tried before a referee, who made findings and conclusions favorable to plaintiff. The referee's report was confirmed, and, the findings and conclusions having been adopted by the court, a judgment and decree for the foreclosure of the several liens and the disposition of the proceeds on foreclosure sale was entered. The Masonic Building Association, having moved for a new trial and its motion having been denied, appeals from said judgment and order denying a new trial.

It is admitted by appellant that the only proposition it relies upon on this appeal is as to the legal effect of the failure of plaintiff to give to appellant the notice provided for in section 699 of the Code of Civil Procedure. Appellant admits that the plaintiff complied fully with the provisions of section 697 of said Code, but claims that those two sections are in conflict, in that they purport to cover the same subject-matter, the regulation for obtaining mechanic's lien by subcontractors, and they being, as claimed by appellant, in conflict the one with the other, that the section latter in order of place in the statute must be held to be the law on the subject covered by said sections; and that said section 697 ceased to exist upon the adoption of section 699 in its present form. Appellant has cited numerous authorities in support of the above contention, but, inasmuch as we are unable to see the

conflict claimed, it will be unnecessary for us to review such au-
thorities.   The sections read as follows:

"Sec. 697. Every subcontractor wishing to avail himself of
the benefits of this chapter shall within four months after the
material shall have been furnished or labor performed file with
the clerk of the circuit court of the county or judicial subdivision
in which the building, erection or other improvement to be
charged with the lien is situated a just and true account of the
demand due him after allowing all credits and containing a correct
description of the property to be charged with said lien and verified
by his affidavit."

"Sec. 699.  Every subcontractor may, at any time, within four
months after his labor is performed or materials furnished, make
a statement thereof in writing, supported by affidavit that the same
is just and true, and file the same with the clerk of the circuit
court of the proper county or judicial subdivision, and give notice
thereof, with a copy of such statement to the owner, his agent or
trustee, and to the contractor; and from and after the service of
such notice, his lien therefor, shall have the same force and effect,
and be prosecuted in like manner as a lien by the contractor, but
shall be enforced against the property only to the extent of the
balance due to the contractor at the time of the service of such
notice upon the owner, his agent or trustee."

A glance over the history of the mechanic's lien law shows
that, while such history dates from long prior to the Revised Code
of 1877, yet our present statutes are traceable back to that Code.
In the said Code of 1877, there was section 656 of the Code of
Civil Procedure, being the section from which has come to us
section 697, supra. There was also section 658 of such Code, from
which we have derived section 699. In fact, the only change that
has ever been made in such section 658 was the changing of the
length of time within which the lien could be filed from six months
to four months, which change was made upon the adoption of our
present Code in 1903.   There have been several amendments to
the old section 656, a history of which down to and including
amendment by the Session Laws of 1883 will be found set out in
the case of Albright v. Smith, 2 S. D. 577, 51 N. W. 590.  As

will be seen by a reading of that case, at the time the cause of action arose therein, the section from which we have derived 697 contained a provision giving a lien to extent of debt due contractor even if lien was filed after the time specified in such section, and there was no limit of time within which such lien might be filed; the only parties protected against such lien, if filed after the 60 days therein mentioned, being purchasers and incumbrancers in good faith and without notice. A reading of the original sections 656 and 658 together with their amendments will show that there were two separate objects in the minds of the legislators which they were embodying in said sections: One, the giving to the subcontractor an absolute lien regardless of debt due contractor; the other, the giving to the subcontractor a lien limited to the amount due the contractor. Section 656 with its several amendments provided the first, and for a time, from 1881 to 1895, provided for the second under certain restrictions. The second has always been provided for by section 658 and such section as amended. In 1895, by chapter 135, p. 155, Sess. Laws, section 656 was again amended by striking out the part giving a lien even where the required statement was not filed until after the time therein provided, but extended time for such filing to four months. It will thus be seen that as far as the provisions of these two sections standing alone were concerned, from 1881 to 1895, section 656, during the time therein limited for. filing of lien, gave ,to the subcontractor by the filing of a lien under its provisions everything that could have been obtained under section 658, and even after the 30 or 60 day limits provided in said section 656 a person by filing a lien thereunder obtained almost the same relief as under section 658. Thus, if there ever was a conflict, it was existing during that period, but the court in the Albright Case ruled that no notice to the owner of the property was necessary, but a lien could be secured by following section 656 strictly.

Appellant does not claim there was ever any conflict until in 1903, by the amendment of the old section 658 changing the "six months" to "four months," as it was now in section 699, supra, the time for filing liens was fixed the same in the two sections. According to appellant's contention, if the amendment had made it

four months and one day or four months lacking a day, both sections would remain in full force. We can see no logic in such a contention. The two reliefs granted are different in degree, confining the same solely to sections 697 and 699, and, while we may think it strange that the Legislature imposed greater burdens on the man who only sought the limited lien than on the other, yet the reason therefor was for the Legislature to determine, not the courts. But both sides seem to have lost track of one very important provision in our Code which makes these two sections of vastly different effect and clearly shows that the mere time of filing the liens can have no controlling effect in determining the question of conflict between the two sections. When sections 656 and 658 of the 1877 Code were adopted,there were also adopted some other sections connected with and affecting both of such sections. These sections have remained in our several Codes, and with very slight amendments, being now known as sections 700, 701, and 702 of the Code of Civil Procedure. While these sections originally applied to section 656 as well as 658, yet the amendment of 656 in 1881 so changed the same that they then in no manner applied to the conditions and requirements of such section. This was recognized by the court in the Albright Case: the court saying: "The notice referred to in the other provisions of the law do not relate to this claim, but those filed under the last provision of the law, viz., section 5472;" section 5472, referred to, being our present section 699 and the original section 658. Appellant concedes this by saying in its brief: "Sections 700, 701, 702, Code Civ. Proc., contain provisions explanatory of section 699, and provide for the settlement of the account, the service of the notice, and the withholding of moneys from the principal contractor." Section 701 is as follows: "Sec. 701. The certificate of settlement or statement of the subcontractor, shall be a justification to the owner in withholding from the contractor the amount appearing thereby to be due the subcontractor until the same has been paid, and the owner shall become the surety of the contractor to the subcontractor for the amount due to the extent before provided." An examination of this section shows that under this section and section 699 a subcontractor not only gets a lien limited only to

amount unpaid the contractor, but he gets a right to hold the owner personally as surety to that amount, a right which might under some circumstances, far exceed anything he could secure under section 697, and a right entirely different in nature from that contemplated by such section 697. Let us suppose that a costly structure had been erected, and within a few days after completion it burned to the ground or was destroyed by a storm, that the owner was owing the contractor a large sum of money on the building contract, and the property was nearly worthless. If a subcontractor had prior to the destruction of the building sought his absolute lien, would he not speedily comply with the necessary requirements to give him his rights against the owner personally? It is thus seen that sections 697 and 699 provide widely different reliefs, and do not conflict. Furthermore, this court, taking judicial notice of the history of our mechanic's lien laws, and also of the fact that prior to the adoption of the Code of 1903 a commission was appointed who prepared our present Code, and that as so prepared it was adopted as a whole, we are bound to presume that it was not the intention of the legislators to do away with the right to an absolute lien on part of subcontractors. If such had been their intention, they would certainly have dropped 697 from the new Code.

Respondent prays that appellant be mulcted in damages to extent of 10 per cent. of judgment appealed from, claiming that the appeal was taken for delay. While we believe that this rule of court for imposing penalty on appeal brought for delay is salutary, and that we should not hesitate to enforce it in proper case, yet we should feel certain that the reason exists. We could not believe, except upon overwhelming proof, that the attorneys who represent the appellants herein would consent to the taking of, say nothing of advising, an appeal merely for delay. We believe they have too much regard for the oath they have taken as officers of this court.

The judgment of the trial court and order denying a new trial are affirmed.