(No. 41853.—

LAWYERS TITLE OF PHOENIX *et al.*, Appellees, *vs.* ARTHUR GERBER *et al.*, Appellants.

*Opinion filed Nov. 26, 1969.—Rehearing denied Jan. 26, 1970.*

GORDON H. S. SCOTT, JOHN H. SCHLEGEL, and ALFRED R. LIPTON, all of Chicago, (ALBERT KEEFE, of counsel,) for appellants.

ARVEY, HODES & MANTYNBAND, of Chicago, (RALPH A. MANTYNBAND, of counsel,) for appellees.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Arthur Gerber, hereafter defendant, appeals from a judgment of the circuit court of Cook County which denied his

motion to quash a writ of *capias ad satisfaciendum* that directed the sheriff of Cook County to take him into custody and to confine him in the Cook County jail until he satisfied a judgment that had been entered against him, or was discharged according to law. The appeal is taken directly to this court on the ground that the defendant's rights under the constitutions of the United States and of this State have been violated.

The proceedings which culminated in the judgment before us may be thus summarized: The plaintiffs in the present action are numerous individuals who entered into a joint venture promoted by the defendant, his brother Allan Gerber, and their respective sons. The venture contemplated the purchase of land located in Arizona. The plaintiffs deposited cash in the amount of $178,000 in an escrow agreement entered into to facilitate the purchase of the land, and the land was purchased. Subsequently an action was instituted in Arizona to foreclose a third mortgage executed in connection with the purchase of the land. The plaintiffs in the present action were defendants in the Arizona foreclosure action. They filed a counterclaim which alleged that the Gerbers were secretly the owners of the property which was the subject of the joint venture, that they had concealed that fact from their fellow joint venturers and had thereby realized a secret profit. On September 19, 1968, the superior court of Navajo County, Arizona, entered judgment on the counterclaim in favor of the present plaintiffs in the sum of $125,000. The Arizona judgment included the following finding: "The court expressly finds that said judgment is for a tort wilfully and maliciously committed by counter-defendant Arthur Gerber. Malice is the gist of the action." No appeal was taken from this judgment.

Thereafter, on September 26, 1968, the present plaintiffs petitioned the circuit court of Cook County to register the Arizona judgment in Illinois under the Uniform Enforce-

ment of Foreign Judgments Act. (Ill. Rev. Stat. 1967, ch. 77, pars. 88-105.) After a hearing, the circuit court entered an order on November 20, 1968, which directed that the Arizona judgment be registered, and that execution and a writ of *capias ad satisfaciendum* issue, directed to the defendant, Arthur Gerber. On December 12, 1968, a hearing was held on the return of the writ. The defendant moved to quash the writ on the grounds that its enforcement in this case is not authorized by Illinois statutes, and that a body execution would violate his constitutional rights because of his indigence and also because Arizona, where the original judgment was entered, does not permit body execution. The circuit court found that the body execution was properly issued and ordered that the defendant be taken into custody until he satisfies the judgment or is discharged according to law.

In this court the defendant contends that both the applicable statute and section 2 of article II of the constitution of Illinois forbid an execution against the body in this case, and that the incarceration of the defendant, based solely upon his inability to pay a civil debt, violates the eighth and fourteenth amendments to the constitution of the United States. He also argues that since Arizona does not permit body execution, to enforce an Arizona judgment by that method in this State would violate the due process clause of the fourteenth amendment.

We find it unnecessary to consider the constitutional contentions advanced by the defendant, for we are satisfied that the governing statute, properly construed, does not authorize the issuance of a body execution in this case. That statute is section 5 of the Judgments Act. (Ill. Rev. Stat. 1967, ch. 77, par. 5.) Prior to its amendment in 1935, it provided that execution could issue against the body of a defendant if any one of three enumerated conditions existed: (1) A judgment had been obtained for a tort, or (2) the defendant had

been held to bail upon a writ of *capias ad respondendum,* or (3) the defendant had refused to deliver up his estate for the benefit of his creditors.

The section then read as follows: "No execution shall issue against the body of the defendant, except when the judgment shall have been obtained for a tort committed by such defendant, or unless the defendant shall have been held to bail upon a writ of capias ad satisfaciendum [respondendum] as provided by law, or he shall refuse to deliver up his estate for the benefit of his creditors." Ill. Rev. Stat. 1933, ch. 77, par. 5.

Although the section prior to its amendment, read literally, applied to any judgment in tort, its scope had been effectively limited by section 2 of the Insolvent Debtors Act (Ill. Rev. Stat. 1933, ch. 72, par. 2) so that it applied only to judgments in tort in which malice was the gist of the action.

In 1935 section 5 was amended to read as follows: "No execution shall issue against the body of the defendant except when the judgment shall have been obtained for a tort committed by such defendant, and it shall appear from a special finding of the jury, or from a special finding by the court, if the case is tried by the court without a jury, that malice is the gist of the action, and except when the defendant shall refuse to deliver up his estate for the benefit of his creditors." Ill. Rev. Stat. 1967, ch. 77, par. 5.

The defendant contends that the 1935 change in the section restricted the possibility of an execution against the body of a defendant to those situations in which the judgment was for a tort and malice was the gist of the action, *and* the debtor refused to deliver up his estate for the benefit of his creditors. Both these requirements must be met, he contends, before there may be imprisonment for debt. In support of this argument he relies upon the substitution of the conjunctive "and" for the disjunctive "or" in the statute prior to its amendment.

This issue has never been decided by this court, although the appellate court has, since the 1935 amendment, affirmed judgments which provided for body execution without any showing that the defendant had refused to deliver up his estate. (See, e.g., *Caldwell Advertising, Inc.* v. *Maloney,* 84 Ill. App. 2d 148; *Brandtjen & Kluge, Inc.* v. *Forgue,* 299 Ill. App. 585.) Two decisions of this court, *In re Petition of Blacklidge,* 359 Ill. 482, and *White* v. *Youngblood,* 367 Ill. 632, have sometimes been relied upon as settling the meaning of the statute, but the former case was decided before the 1935 amendment, and the later case was transferred to the appellate court, and decided only that this court lacked jurisdiction.

We are of the opinion that the contention of the defendant is sound. The deliberate substitution of the conjunctive "and" for the disjunctive "or" points directly to this result, and no attempt has been made to justify any other construction. Moreover, this construction of the statute avoids very serious constitutional difficulties to which any other reading of the statute would give rise. A debtor against whom a body execution has been issued is required to be released from custody at any time upon payment of the judgment. (Ill. Rev. Stat. 1967, ch. 77, par. 68.) This is true regardless of the quality of the misconduct upon which the judgment was based. The net result is that the imprisonment of the judgment debtor depends upon the extent of his resources rather than the degree of his fault.

The observations of Mr. Justice Jackson concerning proceedings in connection with a turnover order in bankruptcy are relevant here: "Conduct which has put property beyond the limited reach of the turnover proceeding may be a crime, or, if it violates an order of the referee, a criminal contempt, but no such acts, however reprehensible, warrant issuance of an order which creates a duty impossible of performance, so that punishment can follow. It should not be necessary to say that it would be a flagrant abuse of process

to issue such an order to exert pressure on friends and relatives to ransom the accused party from being jailed." *Maggio* v. *Zeitz,* 333 U.S. 56, 64, 92 L. Ed. 476, 484, 68 S. Ct. 401.

Moreover, a creditor in whose favor a tort judgment is entered with a finding that malice is the gist of the action, is not required to resort to a body execution. Whether or not his debtor is to be imprisoned depends entirely upon his unfettered inclination. Viewed from the perspective of the debtor, therefore, the effect of the statute is that he is to be subjected to imprisonment for six months only if his creditor decides to imprison him and he lacks the funds with which to pay the judgment.

These objections are avoided by construing the statute in accordance with its literal terms. Body execution is forbidden except when the judgment has been entered upon a finding that malice was the gist of the action and the judgment debtor has refused to surrender his property for the benefit of his creditors. So construed the statute operates uniformly upon all judgment debtors and the serious constitutional problems which would follow upon any other construction of the statute are avoided.

The judgment of the circuit court of Cook County is reversed.

*Judgment reversed.*